United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued November 13, 2001 Decided December 28, 2001 

 No. 00-1505

 Joseph G. Podewils and Gerald Nell Inc., 
 Petitioners

 v.

 National Labor Relations Board, 
 Respondent

 International Brotherhood of Electrical Workers, 
 Local 494, 
 Intervenor

 Petition for Review of an Order of the 
 National Labor Relations Board

 Kevin J. Kinney argued the cause for petitioners. With 
him on the briefs was Gene M. Linkmeyer.

 Steven B. Goldstein, Attorney, National Labor Relations 
Board, argued the cause for respondent. With him on the 
brief were Arthur F. Rosenfeld, General Counsel, John H. 

Ferguson, Associate General Counsel, Aileen A. Armstrong, 
Deputy Associate General Counsel, and Julie B. Broido, 
Supervisory Attorney.

 Matthew R. Robbins argued the cause for intervenor. 
With him on the brief was Jonathan M. Conti.

 Before: Edwards and Tatel, Circuit Judges, and 
Silberman, Senior Circuit Judge.

 Opinion for the Court filed by Senior Circuit Judge 
Silberman.

 Silberman, Senior Circuit Judge: Joseph G. Podewils and 
Gerald Nell Inc. petitioned for review of the National Labor 
Relations Board's determination that Local 494 of the Inter-
national Brotherhood of Electrical Workers (the Local) did 
not violate section 8(b)(1)(B) of the National Labor Relations 
Act1 by fining its member Podewils $100,000 after he went to 
work as a supervisor at Gerald Nell. The Board's decision 
turns on its finding of fact that the Local was not seeking a 
collective bargaining relationship with the company when it 
processed an internal charge against Podewils. That finding 
is not supported by substantial evidence and therefore we 
grant the petition for review.

 I.

 This case involves the limits on a union's ability to disci-
pline a member who is also performing labor relations super-
visory functions. Podewils was a rank-and-file member of the 
Local from 1976 to 1997, when he went to work as a manag-
er--running the electrical division--for Gerald Nell Inc. (a 
nonunion shop). Before beginning work at Gerald Nell, 
Podewils went to the Local's office twice in October 1997 and 
filled out an honorary withdrawal card, informing Leon Bur-
zynski, a business representative for the Local, that he was 
withdrawing for personal reasons. From October to Decem-
ber 1997, Burzynski, acting on an anonymous tip that Podew-
ils was working at Gerald Nell, sought him out. On Decem-

__________
 1 29 U.S.C. s 153 et seq. (2001).

ber 1, 1997, Burzynski went to the company's offices to find 
Podewils; he claimed his intention was to verify that Podewils 
was working there. But the ALJ refused to credit Burzyn-
ski, since he could easily have verified Podewils' employment 
by a phone call. Burzynski, instead of pursuing the issue 
whether Podewils could legitimately withdraw from the Un-
ion, asked: "Is there any possibility you being here means 
that the electricians here might become union." Podewils 
responded "that wouldn't happen here ... that wouldn't be 
an option." Burzynski gave Podewils his business card with 
his home phone number written on the back, which the ALJ 
found was for the purpose of giving Podewils an opportunity 
to change his mind. The business representative then went 
back to his car and immediately drew up an internal charge 
against Podewils for violating several provisions of the 
I.B.E.W. Constitution--one violation was for working for a 
nonunion employer while still a member of the Union. Po-
dewils did not call Burzynski and the latter filed charges with 
the Local two weeks later.

 Two months after that, the Local informed Podewils by 
letter that he had been charged with violating the I.B.E.W. 
Constitution. After a hearing, to which Podewils was invited 
but did not attend, the Local informed him that he had been 
found guilty and assessed a fine of $100,000. Burzynski 
testified that the penalty was proper because Podewils had 
already been responsible for over $250,000 of work that 
should have been "done union." Podewils sought counsel 
after receiving notice of the fine and appealed to the Interna-
tional, which reduced the fine to $10,000, based on Podewils' 
salary and the period of time he had worked for Gerald Nell 
as opposed to the amount of union work allegedly lost.

 Petitioners then filed unfair labor practice charges against 
the Local and the International alleging a violation of section 
8(b)(1)(A), which makes it unlawful for a labor organization or 
its agents "to restrain or coerce ... employees in the exercise 
of the rights guaranteed in section 157 of this title[,]" for 
disciplining Podewils after he resigned from the Union and 
also a violation of 8(b)(1)(B), which makes it unlawful "to 
restrain or coerce ... an employer in the selection of his 

representatives for the purpose of collective bargaining or the 
adjustment of grievances...." 29 U.S.C. ss 158(b)(1)(A), 
(b)(1)(B).

 The ALJ rejected petitioners' contention that Podewils had 
effectively resigned from the Union, so he concluded the 
Local did not violate section 8(b)(1)(A) of the Act. He found 
that there was no credible evidence to support Podewils' 
contention that he mailed the Local a resignation letter it did 
not receive. Turning to the section 8(b)(1)(B) allegation, and 
applying the three-part test set out in NLRB v. Electric 
Workers IBEW Local 340 (Royal Electric), 481 U.S. 573, 585-
89 (1987), the ALJ made the following three findings: Podew-
ils was a section 8(b)(1)(B) "grievance adjuster"; the Local 
was seeking to unionize Gerald Nell's employees; and the 
$100,000 fine was intended to adversely affect Podewils in the 
performance of his section 8(b)(1)(B) duties. The ALJ recom-
mended dismissal of all allegations against the International.

 The general counsel, petitioners and the Local all filed 
exceptions. The Board adopted the ALJ's recommended 
dismissal of the 8(b)(1)(A) allegation as well as the dismissal 
of the charges against the International. But the Board 
reversed the ALJ's finding that the Local was seeking a 
contractual relationship with Gerald Nell. The Board pur-
portedly found no basis for disputing the ALJ's credibility 
findings but thought the only evidence supporting the general 
counsel's contention that the Local was seeking a collective 
bargaining relationship with Gerald Nell was Burzynski's 
inquiry. And that remark "standing alone, falls short of the 
kind of concrete evidence necessary to show a union is 
currently and actually seeking ... a collective bargaining-
relationship." Member Hurtgen dissented. Petitioners con-
test only the Board's determination that the Local did not 
violate 8(b)(1)(B).

 II.

 The law governing this case is undisputed. A union vio-
lates 8(b)(1)(B) by disciplining a supervisor who has either 
collective bargaining or grievance adjusting duties and there-

by coercing an employer only if it has, or is seeking, a 
collective bargaining relationship with the employer. See 
Royal Electric, 481 U.S. at 590.2 The Board has not adopted 
the interpretation of section 8(b)(1)(B) Justice Scalia ad-
vanced in his Royal Electric concurrence: that the section 
only applies "to circumstances in which there is an actual 
contract between the union and affected employer, without 
regard to whether the union has an intent to establish such a 
contract." Id. at 597 (Scalia, J., concurring). The Board has 
said that in the absence of an existing collective bargaining 
relationship "the evidence must show that the union engaged 
in specific overt acts such as picketing or hand-billing for 
recognition, soliciting authorization cards, or making state-
ments to an employer indicating a concrete interest in repre-
senting the employer's employees, as opposed to a long-term 
objective of organizing employees generally." Plumbers Lo-
cal 597, 308 N.L.R.B. 733, 733-34 (1992) (emphasis added). 
The Board did not purport to alter this articulation of the 
applicable legal standard. Instead, the Board, reversing the 
ALJ, found that the Local was not in fact actually seeking a 
collective bargaining relationship with Gerald Nell--Burzyn-
ski's statement was not sufficiently "concrete"--and petition-
ers claim its finding lacks substantial evidence on the whole 
record.

 So much would appear straightforward. But counsel for 
the Board and for the intervening Local have sought to divert 
our attention. The Board argues extensively in its brief that 
its finding that Podewils did not resign from the Union is 
entitled to deference, despite the fact that petitioners explicit-
ly do not challenge that finding and the resulting determina-

__________
 2 The Supreme Court's opinion carefully limiting 8(b)(1)(B) to the 
case of a union that has or is seeking a collective bargaining 
relationship with an employer is in part based on the premise that a 
union member--particularly a supervisor--has "a right to resign 
from a union at any time and avoid imposition of union discipline." 
Royal Electric, 481 U.S. at 595 (emphasis added). This case 
suggests it may not always be that easy. The ALJ found that each 
Local office worker testified that he or she was under no obligation 
to explain to Podewils he should resign, not withdraw.

tion that the Local did not violate 8(b)(1)(A). At oral argu-
ment the Board's counsel also suggested that the discipline 
meted out to Podewils was not really designed to impact the 
employer's selection of a grievance adjuster (although just 
how Podewils could manage the electrical division without the 
ability to adjust grievances seems obscure). Yet the Board 
did not even suggest that ground in its decision.

 The intervenor, for its part, argued that Podewils should 
not really be considered a grievance adjuster presumably 
because that term should be limited to grievances that arise 
out of a collective bargaining relationship. See Royal Elec-
tric, 481 U.S. at 588 n.12. Intervenor's difficulty is that the 
Board did not rest its decision on this reasoning; the Board 
assumed that Podewils qualified as a grievance adjuster.

 We agree with petitioners. The inferences the Board 
draws from the evidence are quite unreasonable and there-
fore under Allentown Mack Sales & Servs. v. NLRB, 522 
U.S. 359, 378 (1998), the Board's finding must be rejected. 
See also Warshawsky & Co. v. NLRB, 182 F.3d 948, 953 (D.C. 
Cir. 1999). First there is an internal contradiction in the 
Board's decision. It purported not to disturb the ALJ's 
credibility findings. Yet it rejected the ALJ's conclusion, 
based on his refusal to credit Burzynski, that the business 
agent personally went to Gerald Nell to confront Podewils 
(rather than simply call to verify his employment) for the 
very purpose of seeking union recognition. The Board mere-
ly stated that it refused to draw an "inference" that the Local 
had an "improper retaliatory purpose" because of the person-
al visit. The question, however, is whether that personal visit 
was itself evidence of the Local's attempt to gain recognition 
and the Board advanced no reasons to reject the ALJ's 
finding, buttressed by his credibility determination, that it 
was.

 Moreover, the Board also refused to draw any inference 
from the fact that Burzynski left his business card and 
telephone number with Podewils, rejecting the ALJ's finding 
that Burzynski's purpose was to give Podewils a chance to 
change his mind concerning establishing a collective bargain-

ing relationship with the Local. This also seems to be a 
rather off-hand rejection of the ALJ's credibility determina-
tion, but, in any event, the Board's explanation is ridiculous: 
that leaving his card with Podewils was consistent with 
"Burzynski's responsibility as a business representative to 
communicate with constituent members such as Podewils." 
One does not have the impression that Burzynski wished to 
communicate with Podewils as his business representative.

 Burzynski admitted, moreover, that if Podewils had called 
with a change of mind Burzynski would not have filed 
charges. The ALJ took that as further evidence linking the 
Local's purpose to gain a collective bargaining relationship 
with the retaliatory fine against Podewils. The Board rea-
soned, however, that if Gerald Nell had recognized the Local 
the charges would have been mooted since Podewils would no 
longer be working for a non-union company. As petitioners 
suggest, that reasoning includes a logical flaw; Podewils 
would still have violated the I.B.E.W. Constitution, according 
to the Local, by his past behavior, so Burzynski's posture can 
only support a recognition motive.

 Finally, the Board ignores a damaging piece of evidence--
the elephant in the room so to speak--that along with Bur-
zynski's visit and comments to Podewils conclusively estab-
lishes that the Local sought a collective bargaining relation-
ship with Gerald Nell and retaliated against Podewils for not 
providing it. That evidence is the size and basis for the fine. 
Counsel for the Board argues that the reasonableness of an 
internal union fine is not a matter which we can consider. 
That is so, but we certainly can look at the size and purpose 
of the initial fine, as did the ALJ, for the purpose of deter-
mining the Local's motivation. And the subsequent modifica-
tion of the fine by the International, both as to the amount 
and basis, is not really relevant to the Local's intent. If 
anything, it is damning since it reflects the International's 
realization that the Local was in an untenable legal position.

 Not only did the Local levy on Podewils the staggering fine 
of $100,000, it made clear that the fine was based not on 
Podewils' salary, but on the supposed amount of money the 

Local had lost because Gerald Nell was unorganized. We 
think it is quite astonishing that the Board ignores this 
evidence.

 To be sure, as the Board noted, the Local never engaged in 
solicitation of authorization cards, picketing or hand-billing, 
nor did it demand recognition. But unions often gain recog-
nition--particularly in certain crafts--from the top down, by 
simply requesting recognition from a sympathetic manager or 
asking a sympathetic manager to help with organizing, which 
is exactly what the ALJ determined was the Local's purpose. 
That Burzynski did not make a demand for recognition or 
engage in public organizational efforts probably reflected a 
lack of employee support. It is flatly unreasonable, however, 
to conclude, as the Board does, that his solicitation was 
somehow not "concrete evidence" that the Local was seeking 
a collective bargaining relationship with Gerald Nell--particu-
larly when combined with the balance of the evidence. The 
statement itself was not coercive but that hardly detracts 
from its probative value as an indication of the Local's 
objective.

 In light of the whole record, the Board's treatment of 
Burzynski's inquiry as not "concrete" enough to establish that 
the Local was "actually" seeking a collective bargaining rela-
tionship at Gerald Nell is equivalent to an attempted robbery 
case where it is argued that a panhandler's "request" for a 
contribution is not concrete enough to establish his objective 
despite the fact that when he is refused he hits the victim in 
the head with a club.

 * * * *

 Accordingly, the petition for review is granted, 
and the case is hereby remanded to the Board for further
proceedings not inconsistent with this opinion.
 So ordered.